1109 Campbell Pet Company against Miale Mr. Rylander, you may begin when you're ready. May it please the court, your honors, I'm Kurt Rylander on behalf of the plaintiff appellant in this case. We're asking the court to reverse the judgment of the Western District of Washington and in this case it is a declaratory judgment action and we have asked for a declaratory judgment that our clients do not infringe two patents that we understand now are owned by Ms. Therese Miale. The district court ruled on the motion of the defendants that it did lack personal jurisdiction over the defendants. On motion reconsideration it ruled that it had the first two prongs of the personal jurisdiction formula, but that it would offend traditional notions of fair play. That was different than the first. The first opinion, he said, didn't meet prong number two, right? That's correct. The first one, presumably based on something you submitted, he changed his view of that. That's correct, your honor. The first decision was that there was a lack of general jurisdiction and that it met the first prong of specific jurisdiction, but that it lacked the second prong of specific jurisdiction nexus, and apparently at that point he was only looking at the invalidity claim. So when he focused on infringement he said, well, all right, with respect to the inverse infringement aspect of the declaratory judgment claim, the assertion of non-infringement that the second prong was met, but not the first. That is correct. On the order of reconsideration he said the first and second prongs are connected, but now the third prong is not met. However, in doing so, he didn't go through the analysis that is required by Burger King and decisions of this course, which is the number of factors. There's five factors as to what the interest of the plaintiff in attaining a good forum, the interest of the forum state, and the other factors. He didn't do that. He said, well, what she did in Washington was the same as informing of patent rights. And in the Red Wing decision, the Federal Circuit ruled that informing someone of patent rights should not make them be submitted to another court's jurisdiction or not. So I presume you've read Red Wing. I have, Your Honor. I realize that that is pertinent to this case. And in Red Wing the court did say, did it not, that just sending cease and desist letters was insufficient for specific jurisdiction. That is correct, Your Honor. So he didn't proceed to go through any additional factors in terms of the analysis? No, he did not, Your Honor. In fact, he apparently equated the letter in this case as well as the contact in Washington as the same as the three letters. No, no, I'm asking about in Red Wing. They didn't go through, the court, our court, did not go through any additional analysis other than cease and desist letters not enough. No, the court did not. The court ruled in that case. So what's the difference between this case and Red Wing? Well, the difference between this case and Red Wing is that, unlike in Red Wing where the patent owner had never set foot in Minnesota and didn't, in fact, even have an exclusive licensee in Minnesota, and apparently there's a whole subset of federal circuit decisions dealing with when an exclusive licensee is present, in this case, the actual controversy arose even before the letter was sent. So you have a cease and desist letter sent, or they would say an offer of negotiation, including a claim chart that says you clearly fall within the claims. But the controversy arose at the Trade Center in Seattle when Ms. Miali went over and said, you're copying our patents. Well, Red Wing doesn't specify the fact that a cease and desist letter isn't in person and is just in mail is a distinguishing characteristic, right? I mean, if someone came to Washington and simply read the contents of a cease and desist letter as opposed to mailing it, do you think that would change the result in Red Wing? I believe there's a good chance it might, Your Honor. And I'll tell you why. Because in Red Wing, the only contact was a letter without personal presence. So the whole question of what other activities there are, if you're personally present, that is the other activities. Now, in your situation, they're combining the letter with the personal presence in the state, and the personal presence would be a direct nexus. I believe that is a different case. And I would submit that under some of the decisions, it would look like that would result in jurisdiction. What decisions are those? Well, for example, Your Honor, and I'll raise this one, in the Silent Drive case, which you were on, Your Honor, that is a very unusual case in which the only issue was letters to a foreign state. And in that one, the court said, OK, well, the letters are not sufficient under the unique qualities of our declaratory judgment jurisprudence, but the letters are sufficient for personal jurisdiction for the state law claims, and therefore, will assert supplemental jurisdiction over the patent law claims for declaratory judgment. Now, I would submit that under the Burger King jurisprudence, that would have still been subject to the traditional notions of justice and fair play. So if traditional notions of justice and fair play were not offended in Silent Drive, where the only issue was letters, then here, clearly, they could not be offended. And frankly, I've thought this, Your Honor. I think Judge Prost's hypothetical is a really good place to start in thinking about the issues in this case, because we know that a letter wouldn't do it. And if you add the letter delivered in person without any finger-pointing accusations or any of the window dressing that you've alleged is present in this case, you say, well, that would be a case which would be at least a stronger candidate for jurisdiction. It's more than a stamp when you travel to the state. If it's just the letter, it's just, OK, here's our patent rights. Here's a stamp. Well, there's clearly more in some sense. And the question is, is it enough to make a difference? And what you've got in this case is really, with respect to specific jurisdiction now, not general jurisdiction, but with respect to specific jurisdiction, really is just Judge Prost's hypothetical, isn't it? Do you have anything more than, in effect, delivering a letter in person? Well, I believe we do, Your Honor. Presence at the trade show is merely the occasion for the delivering of the letter. In other words, the thing that Red Wing identified as the thing that triggers the right to bring suit, if at all, is the threat, right? And that was delivered in person. But beyond that, what is it that gives specific jurisdiction in this case? Well, first of all, I would argue there's general jurisdiction in this case. Well, I understand. But I'm focusing on specific. Your Honor, in this case, the facts in this case go well beyond Judge Prost's hypothetical. Right, they do. But the question is, why do they matter with respect to specific jurisdiction? Any difference between the facts of this case and Judge Prost's hypothetical? Well, because, one, there's more than one simple statement of notice of patent rights. So Judge Prost's example, they brought a letter into the state, and they read the letter in the state. In this case, forgetting the letter, at the trade show, there were multiple contacts over the three days. OK, so multiple letters. And in those, they were even more direct than the letter. The letter, of course, was couched in the legal art of making letters that patent attorneys in this country in the last 10 years have managed to come up with. But I don't see why the sharpness of the tone, let's say, of the accusation makes a difference for purposes of specific jurisdiction. I mean, suppose she launched into a tirade of obscenities. That wouldn't make your case for jurisdiction stronger, would it? Well, if the obscenities in the state of Washington were somehow directly a nexus between the patents, I would assume there's a connection between the obscenities and infringement. You understand my question. I do understand your question, Your Honor. Does the vehemence of the assertion increase the likelihood of the propriety of exercising jurisdiction, is my question. No. I don't believe the vehemence of that you're a dirty, rotten infringer changes the contact. But the number of contacts, where it takes place, where the patent donor is physically located when they take place, how often that occurs over that time period, and attempts by the patent owner to actually enforce those patent rights, I think that does change it quite a bit. But what are we talking about here in terms of the facts that support your argument? I mean, there was one incident, right? Well, I believe there was at least three incidents over three days in addition to contacting the convention forum manager. OK. So that is why I say there's more than one incident over that time period. Now, for example, if traveling in the state of Washington at the Forum Convention Center, the only contact had simply been punching my employee, is there any question there would have been jurisdiction in the state of Washington over that cause of action, whether criminal or civil? No. Would it have offended any traditional notions of justice and fair play? No, but that's the difference. I mean, that's why I think Judge Bryson touched on it, too. I mean, Red Wing doesn't say because it's in writing and you didn't actually go into the state and say anything directly in the state, you're OK. I read what Red Wing is establishing is simply tele-informing an infringer or whatever, giving them notice of your patent and the exercise of your rights. That conduct, whether you say it or do it, where it's said or whatever, is not sufficient. I believe, Judge Prost, that under, as you just stated and clarified your hypothetical, that that really would be more a question of a declaratory judgment, subject matter jurisdiction, and personal jurisdiction. Because I believe, among other things, because of the Supreme Court's case in Burnham, that once you're physically, when you choose to go to the state physically, and in that state you take the action which is offensive, I believe that has been personal jurisdiction in however it's characterized in our country for quite a long time. Before Red Wing. The difference between sending cease and desist letters and going to the state to read them  I believe that is an operative difference, Your Honor. I believe significantly. And if the only thing they're doing in that state is saying. I'm curious about your, you gave a sort of qualified answer to Judge Prost's hypothetical initially saying, well, you know, that would be a stronger case. I would have thought your answer would be, that's an absolutely, clearly, definitively different case in which there'd be absolutely no doubt of jurisdiction. Well. But which is what I understand you to be saying now. Well, frankly, perhaps if I was an older attorney and had more experience in this court, I might have taken that to heart. But I do think it is true. But now we're not commenting on how vehement your protestation was. That's your position, right? That Red Wing can't possibly extend to personal presence in the jurisdiction with respect to the conduct, as opposed to sending a letter in which the only presence within the district is the arrival of the letter. As long as we're not talking about subject matter jurisdictions, I think there's a separate issue there. But yes, I do. I believe the difference of traveling to the state to make it does make, for personal jurisdiction purposes, a big difference over Red Wing. And I think it makes a dispositive difference. I don't know if this means I have two minutes left on my time. No, you're actually into your rebuttal time. OK, well, I will reserve it. Thank you, Your Honor. So we'll reserve your full rebuttal time. Thank you, Your Honor. Thank you, Mr. Rylander. Ms. Mahaney? Good morning. May it please the court? Given the court's questions, I think I should start talking about the threats of infringement. I believe that Red Wing has been extended to apply to threats given in persons. In some of the cases that followed it, I gave it to you. Let me ask you a question before you get into that, just as a predicate. This is probably not in the record, but it would be useful to the extent that you can comment on it. Is this a live controversy in the sense that there is an ongoing dispute between the parties, in your view, as to the question of infringement? Yes. So Ms. Mialius continues to be interested in having this infringement matter settled, and presumably would plan to bring suit somewhere? I don't think I can comment on whether or not she plans to bring suit. She has not brought suit. She has not? She has not brought suit. And the letter that I wrote and sent to the plaintiff, Campbell, actually asked for us to discuss a business relationship. I see. OK. Thank you. So going back to the threats, if you look at some of the cases that came after Red Wing's shoe, you had Hildebrandt, which involved letters and phone calls. You had Electronics for Imaging, which involved both phone calls and meetings in the forum. You had Danepon, I hope I'm pronouncing that right, which also had phone calls and meetings in the forum. And in all of those cases, this court looked at the threats, whether they were in writing or verbal, over the phone or in person, and lumped them together and treated them as one unit, and said that the threats alone were not sufficient to establish personal jurisdiction. And when you think of the rationale behind Red Wing's shoe, which is that- Let me ask you, Hildebrandt, for instance, in those cases, were the facts so that the actual meetings and the presence in the jurisdiction involved the cease and desist? What was the content of the cease and desist letters, the accusations or the notification of infringement? Could you ask that again? Were in those cases that you cite, where you said they were at least one or two, you described, forget phone calls, but that they were actually the presence in the state for meetings? Yes, it was meetings to discuss the issues. And so there were threats made at the meetings or negotiations over possible licenses or so. And which of those cases, you said electronics for imaging? For imaging, which is that- Yeah, I have the case, but that involved an actual presence in the forum state by the declaratory judgment or a representative? Yes, you are. Now, in those cases, in electronics for imaging, in Dana Pond, there were other activities that were found to confer special, I think special, specific jurisdiction. But when the court discussed the threats, it discussed both the written and the verbal in-person threats together. And said- Were they discussing that in the context of subject matter jurisdiction, which of course- No, personal jurisdiction. Previously used to be an issue. Yeah. After some of the court's decisions, we didn't think we could raise that. The Supreme Court in particular. Yes. Okay, but you say this is in the context of the personal jurisdiction issue. Yes, Your Honor. And I think if you look at the rationale behind Red Wing, and that's that fairness and reasonableness, demand that a patentee be able to inform somebody of suspected infringement, why should it make a difference how that threat is delivered? Well, I think there is some force, whether it's right or wrong in the end, but there is some force to Mr. Rylander's point that there has been this long tradition that if I go into your state and punch you in the nose, your state has a very strong interest in having me personally answerable for the conduct that I initiated in your state. Whereas if I simply mail a letter, then I have not inserted myself into the state in the same way, to the same extent. The only reason that Ms. Miali was in the state of Washington was to attend this conference. And it was a national conference that moves around every year. It just so happened to be in Washington, so bad luck here, in 2007. So she was there at a conference. The conference is totally unrelated to the plaintiff's D.J. claims of non-infringement and invalidity. She saw the infringing device for the first time, and she made a threat. Yes, but she may not have left from her home in California to go to Washington to make the threat, but when she was in Washington, she made the threat. Just as if, I mean, you don't have to, I don't have to leave my home to go somewhere with the intent of punching somebody in the nose. But if I end up there for a different reason, I punch them in the nose, I'm still equally subject to the jurisdiction. Right, but that is a criminal act, Your Honor, which is somewhat different. Suppose it's just a civil battery. I would still be subject to, I mean, something that would not be considered a criminal act under some state's law. Right, but there's still something wrong. I mean, a patentee does have the right to inform others of suspected infringement. That is not a wrong act. This court has found that that is a right of the patentee to tell us. But that has something to do with jurisdiction. You don't need, we don't establish jurisdiction simply because somebody does some wrong. It's because of the contact in the state, right? Right, but you need to establish significant, sorry. I'm sorry, go ahead. You need some significant contact with the state, even for specific jurisdiction. While it's true that sometimes a single act can establish specific jurisdiction, the Supreme Court in Burger King made it clear that it has to be a substantial connection to the form. And I don't think going to one trade show and making threats is a substantial connection to Washington. If the form had been in, let's say, Las Vegas, there would be no issue. Just because it happened to be in Washington and the plaintiff, the accused infringent, happened to be in Washington, I don't think that's enough of a substantial connection to drag a patentee into the state. And it seems like if you adopt this rule that you can send a threat by letter, but not in person, you're going to discourage people from discussing issues. You're going to discourage settlement talks. I mean, we all know that settlement talks are much more successful if they're in person. But if you adopt this rule, then nobody will travel to a forum to have a settlement talk because then they might be subject to personal jurisdiction. Is there a difference between settlement talks and threats? True. I think you're right on settlement talks, maybe as a result of a threat that you shouldn't say that brings a person within the personal jurisdiction. It's a fine line. When you have threats and you have actions, but you've been here contacting the floor manager, that's a little bit more than just notifying. True, Your Honor. But as part of any settlement negotiation, there are often threats made. So I think the line would be very hard to draw between something, a threat, and a settlement discussion, at least in all the settlement discussions I am involved in. Somebody always says, if you don't pay this, I'm going to sue you, or something like that. But isn't there a difference here because you have the conduct of going to the building manager? Isn't that above and beyond anything dealing with the notion of a cease and desist letter? I mean, that's trying to affect the other side's conduct in his home state. You were trying to interfere or affect with his ability, his conduct there. Isn't that different, really different in kind? You know, I don't think so, Your Honor. In many of the cases, the progeny after Red Wing, the cases have involved letters to retailers, customers, the industry, and that has never made a difference for a patent claim. In Silent Drive, the letters to the customers, involved letters to customers, this court found specific jurisdiction because of the letters for a claim of intentional tort, intentional interference, but not for the DJ claims of patent non-infringement and invalidity. And I think that's the distinction, Your Honor. Other cases that involve letters or comments to customers and retailers, Breckenridge, Hildebrandt again, genetic implants involved threats to the whole industry. And in none of those cases, did this court look at those threats to third parties and say that they were somehow different than cease and desist letters, at least for the issue of personal jurisdiction for patent claims. And that's all that we have in this case. So assuming, and I guess after recent decisions, this would probably be a fairly safe assumption that there is subject matter jurisdiction that the suit should be brought in California. And that would be appropriate. Yes, if they wanna pursue the suit, they should have brought it in California. That would be our position, Your Honor, where the patentee resides. And we would also argue that if the plaintiff, the appellant, if you find that they have shown a prima facie case of specific jurisdiction, that it would not be reasonable to assert personal jurisdiction in this case. And this is under the third factor of the specific jurisdiction, which I understand is our burden to show. But in this case, we're dealing with an individual, patent owner, and a company, two employees, mom and daughter, they work out of their home. Their annual sales are under $100,000. And that says- Are you understanding, the analysis that the court did, as it was about Red Wing, that was under the third prompt, correct? It was, but it only involved a threat. So your view is that that's okay, because if you find that they don't meet the third prompt, that question, then you don't have to go on and address the additional factors? Correct, Your Honor, that's my view. My view is that under Red Wing, the appellant has to show other activities other than the threats, purposely directed, and are related to the claim. In the first opinion, the district court found that that had not been done. In the second opinion, he came back and he focused only on the threats, the verbal threats that were made at the forum, and he found that- Under the third prompt. And he went to the third prompt, which- He found the first two prompts satisfying. Right, but that- But you don't really, I mean, you take issue with- I find, personally, but under Red Wing, I believe under Red Wing, this court found that threats of infringement are directed at the forum and are related to the cause of action, and that the reason that they don't count for a specific jurisdiction is under the third prompt. Okay, but I mean, what I understood you to be arguing earlier was that you didn't really think they satisfied at least the second prompt. Am I right? Yes. Okay, but you're not now- No, I- Pressing that, all right. I realize I do have to follow precedent of the Federal Circuit. I would dispute that any other activities, because you always have to have something more than a threat for a specific jurisdiction. So your position is we're all under the third prompt, and because the judge was right that the threats under Red Wing don't count, you don't have to reach the other factors. But you're arguing the alternative that even if they did, you have satisfied your burden on those other factors. Correct, Your Honor. But the judge made no analysis with regard to those other factors. No, he didn't. I don't think he had to, because he, unfortunately, sort of did the analysis backwards. The district court, in the motion for reconsideration, he looked at the threats, and he said those can't count under the third prompt because of Red Wing. In the first order, he looked at all the other activities, activities other than the threats, and he found that those were not related to the claim, and therefore, there could be no specific jurisdiction. So I suppose if I had done the analysis, I would have started with the threats, said they can't count under the third prompt, and then I would have looked to see if there's other activities. For Ty Lift and Miss Mealy, because we have two defendants, and they have to be done separately, and if you look at the other activities of each of them, they are not sufficient for specific jurisdiction because they're not related. For Ty Lift, you had some very minimal sales of its own product into Washington. Those are obviously not related to a claim as to whether Campbell infringes a patent or the patent's invalid, and you had the attendance at the trade show. Again, that in and of itself, without counting the threats, is not related. If you look at Miss Mealy herself, who's a patentee, and we would maintain she's an indispensable party here, she has no other contacts with the state of Washington. All she has is the threats that she made. We maintain that she made them as an officer of Ty Lift, but even if you were to say she made them in her own capacity, she has no other contacts with Washington. So the other activities part of the reg wing in this progeny test is not met. She's the owner of the patent, isn't she? Yes, she is, Your Honor. Right, so she's the person that would stand to benefit from any license or infringement. Judgment. I would agree, Your Honor. And obviously, all licensees also benefit. Well, of course. Indirectly. But in any event, it hasn't been assigned to the company, the patent. Correct, it's in her individual name. Any other questions? Well, not so much a question as a comment. It's just, as is often the case with issues of jurisdiction, it's frustrating for us, I have to say, because what one really feels one is doing is not resolving the merits of a dispute, but rather adjudicating questions of leverage. I mean, obviously, it's not, it doesn't take a genius to figure out that if this case stays in Washington, then Campbell has leverage for purposes of any resolution of this dispute. And if it ends up either in California or being the only place that can proceed as California, then you have leverage. It doesn't just, this strikes me as a sort of unsatisfactory way to adjudicate disputes such as this as to spend time, your time, your client's money, their time, their client's money in going through the federal system in order to resolve an issue of leverage for purposes of ultimate resolution. So I don't know if a settlement is something that could be sensibly pursued at this stage, but somehow it strikes me that this is the kind of action in which the pardons would be well-served by taking another look at that possibility. I think pursuing settlement is always a great idea. Well, I- I just want to remind you, we did not file this lawsuit. That's the end of my speech on that. I understand, I understand you didn't. You did, however, file the motion, but I understand that, why that was done as well. Not by way of criticism, by way of comment. All right, very well, why don't we hear from Mr. Ryland. Thank you. Thank you. Yes, I will start by answering a question the court directed to the opposing counsel. This is definitely a live count, a live controversy. Even in the briefings in this court, they're continuing to contend that Campbell infringes one or more of their patents. So there's a threat of infringement hanging over Campbell's head. This is a live controversy from Campbell's perspective. The defendants brought up the cases of Dynapon and Hildebrandt and EFI. In fact, in Dynapon, there was personal jurisdiction found. And also in Electric EFI, personal jurisdiction was found. So in those cases, there was jurisdiction found in both those cases when there wasn't, I don't believe, any actual visits to the state. In which Dynapon, threats and negotiations. Well, maybe there was one visit, and there were threats in the negotiation. In California, personal jurisdiction was found. And the real issue in Dynapon was the fact that the patent owner, the real party in interest, was trying to get away from being sued where they're making the threats by splitting who owns the patent versus who's the licensee. So the parent assigned the patents to its subsidiary and then took a non-exclusive license back and then proceeded to make a whole bunch of threats in California negotiations and then say, well, since the subsidiary's never been to California, you cannot sue the subsidiary in California for declaratory judgment of non-infringement. And the court accurately characterized that as a chutzpah award. That's just ridiculous. They can't get out of free, they can't get a free ride on their actions by trying to split it up between their own wholly owned entities. Yeah, but that's different than this case. Well, that is true, but that was raised by the opposing counsel as a situation which really was just threats in negotiations in here. We would not consider the statements and acts that occurred at the convention center negotiations where you meet in a lawyer's office and you hash out your differences and maybe you raise your fist a little bit and pound the table and see if you can come to a resolution. That did not occur. And Judge Archer, I believe, correctly brought that up that that is a different situation. That may even be controlled by the rules of evidence or whether that stuff can be considered for purposes of anything. Office of Compromise. That is not what happened in the convention. In the convention, they were selling. They did not seek out the defendants. They were selling their product at their booth and defendants sought them out and made the accusations, tried to get them thrown out of the show. Now, to say, well, there's a lot of bad activities, but we're gonna categorize them as just one activity, the informing of rights, and therefore, it doesn't count as other activities, is disingenuous. The jurisprudence is there's a cease and desist letter. Cease and desist letters alone to the forum cannot be a basis for a declaratory judgment of personal jurisdiction. But if you go beyond that and do more, especially in the forum, then there's no case in this court that says when you go to that state and you have more than a cease and desist letter and your contact in that state is directly related to the cause of action, there's never been a case in this court that says that doesn't satisfy personal jurisdiction. And I believe reading the cases that that would satisfy jurisdiction. And once again, we get to a strange area here when we're only dealing with a third prong. Because in the third prong, you're dealing with traditional notions of justice and fair play. You've satisfied the minimum contacts query. The minimum contacts is satisfied. The only question is whether some other reason exists why traditional notions of fair play and substantial justice would say suit cannot be here. And of course, the perfect case for that was the Asahi Metal case, where this dispute happened in Taiwan, the parties were over in Asia, and just by some freak of accident, something happened in California and they brought suit. And so under that prong, they said, okay, traditional notions of substantial justice and fair play say the suit should not be brought here. There's nothing that they did here which would make them think that they could be brought in a suit here. Well, an objective person in the state of Washington doing those acts should have reasonably hailed they be brought in a suit in the state of Washington. If you don't want to be sued in the state of Washington, don't travel there, and more importantly, don't try to get someone thrown out of a trade show and don't make accusations that they're copying your patent and that the patent attorneys are really expensive. If you do that, then it's only fair play that you have to be held accountable for your acts in the state of Washington. Do you agree with the other side, what I understood to be the other side's characterization that one, just cease and desist letters alone are not enough and two, under the case law, cease and desist letters plus notification to customers is not enough? I agree that that is what this court's cases hold. The silent drive case, I believe your case, Judge Prost, is directly on point. If you send the cease and desist letters to a state and to the customers, that by itself is not enough for a textual judgment of non-infringement, but for something else, it would be enough. So would you, just to clarify the point we raised earlier, so your position is if all we had was a traditional notification to a customer and a cease and desist letter, if someone actually travels and delivers that information orally and in person as opposed to putting a stamp on the letter, that that is the difference and that marked difference means that there's specific jurisdiction? I don't want to run out, but I have to disagree with you on that hypothetical. If it was just letters, then yes, I would agree with you. Because letters to customers are protected communications under patent law. But if you travel to the customer, if the customer was in Washington or Montana and they traveled to the customer and they said, "'Geez, these guys are really infringing on our patents. "'You could be liable if you infringe on this patent too. "'You really shouldn't be buying their product.'" That is different, and I believe- So I thought you would agree. I said, maybe I misspoke. I was saying, do you agree, do you think that there's difference, or so you think there's a difference? I do think there is a difference, Your Honor. I believe sending a letter to a customer informing them of your patent rights and that you steadfastly intend to enforce them is different from traveling to the customer. So making the in-person, going to that state, I think makes all the difference. I think the physical travel to the location makes the difference in that case. Once you've gone beyond sending the letter of cease and desist, and you actually go to the state related to that contact, whether it's to personally contact the customers or whether it's to personally do something else related to the accused infringer, that makes the difference. But sending a letter to the customer in addition to sending a letter to the accused infringer, those two by themselves would not be enough under this court's jurisprudence. Do you think we can actually reverse this case when there's been no analysis by the court of the third prong? Or do we have to vacate? Well, depending on how you read Red Wing, maybe the court has done analysis of the third prong simply by saying, well, I characterize it all as informing someone of patent rights. And since this court's review is de novo- I'm asking if we want to reverse. Can we just reverse outright? Or is it necessary to vacate and let the court analyze the third prong? Well, I believe you can just reverse, Your Honor. I don't think they need to be vacated to be remanded. Though, on the other hand, I- You'd rather have a vacate than an affirm. I would rather have a vacate than an affirm. Yes, of the three possibilities, two are the ones we would go for, Your Honor. But you don't think that- You think the judge has essentially spoken on this as far as the third prong and that you don't think there's anything more that he needs to do? Well, I don't think there's anything more he needs to do, Your Honor, but I know Judge Layton and I know that if you remanded to him to consider it, he would definitely do that. Very well. Thank you, Your Honor. The case is submitted. Thanks, both counsel.